**GLAZER'S WHOLESALE DRUG CO., INC., et al., Plaintiffs,**

v.

**State of KANSAS, et al., Defendants.**

**No. 99–2363–DJW.**

United States District Court,
D. Kansas.

April 7, 2000.

Roger M. Theis, John T. Moore, Coy M. Martin, Hinkle Elkouri Law Firm, L.L.C., Wichita, KS, for Plaintiffs.

Richard L. Cram, Kansas Department of Revenue, Bureau of Legal Services, Topeka, KS, Laura M. Graham, Alcohol Beverage Control, Topeka, KS, Christopher J. Tymeson, Kansas Dept. of Revenue—Legal Services, Topeka, KS, David J. Dunlap, State of Kansas, Topeka, KS, for Defendants.

### *MEMORANDUM AND ORDER*

WAXSE, United States Magistrate Judge.

This matter is before the Court on Defendants' Joint Motion To Dismiss (doc. # 11). More specifically, Defendants seek to dismiss Plaintiffs' 42 U.S.C. § 1983 civil rights claims pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). For the following reasons, the Court finds Defendants' motion should be granted in part and denied in part.

### FACTUAL BACKGROUND

Plaintiff Glazer's Wholesale Drug Company, Inc. ("Glazer's") is a Texas corporation engaged in business as a wholesale distributor of wine, beer and distilled spirits. Plaintiffs A.B. Sales, Inc. ("A.B.Sales") and Premier Beverage, Inc. ("Premier") are Kansas corporations engaged in business as wholesale distributors of wine, beer and distilled spirits. Both A.B. Sales and Premier currently are licensed to do business in Kansas as wholesale distributors of beer, wine and distilled spirits.

On or around July 15, 1999, plaintiff corporations executed an Asset Purchase Agreement ("Agreement") in which plaintiff Glazer's agreed to purchase from plaintiffs A.B. Sales and Premier assets relating to the wholesale distribution of alcoholic liquor. Plaintiffs assert they are unable to consummate this Agreement, however, because the Kansas Liquor Control Act ("KLCA") prohibits a nonresident person or entity such as Glazer's from obtaining a license to do business in Kansas as a wholesale distributor of beer, wine or distilled spirits. As a result, Plaintiffs bring the instant cause of action seeking (a) a declaratory judgment finding the KLCA licensing residency requirements invalid under the United States Constitution; and (b) injunctive relief which permanently will enjoin Defendants from enforcing the KLCA licensing residency requirements. The named defendants ("Defendants") in this cause of action are (1) the State of Kansas; (2) the Kansas Department of Revenue; (3) Karla J. Pierce (in her official capacity as Secre-

tary of the Kansas Department of Revenue); and (4) Robert G. Longino (in his official capacity as Director of the Kansas Department of Revenue, Division of Alcoholic Beverage Control ("ABC")).[1]

In lieu of answering the Complaint, Defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) on the grounds that (1) the Court lacks subject matter jurisdiction based on the immunity provision within the Eleventh Amendment to the United States Constitution; (2) Plaintiffs fail to state a claim upon which relief may be granted based on Eleventh Amendment immunity and on the fact that defendants the State of Kansas and the Kansas Department of Revenue are not "persons" under 42 U.S.C. § 1983; and (3) Plaintiffs fail to state a claim upon which relief may be granted because the Kansas Department of Revenue lacks capacity to be sued as a separate entity.

## DISCUSSION

### I. Fed.R.Civ.P. 12(b)(1): Lack of Subject Matter Jurisdiction

Defendants maintain this Court lacks subject matter jurisdiction over Plaintiff's cause of action because the Eleventh Amendment to the United States Constitution, as interpreted by the United States Supreme Court and the United States Court of Appeals for the Tenth Circuit, prohibits a plaintiff from bringing suit in federal court against the State of Kansas, Kansas state agencies or Kansas state officials. Plaintiffs, on the other hand, argue the Court does have jurisdiction over their cause of action pursuant to an exception to Eleventh Amendment immunity, which specifically authorizes suits for prospective relief against state officers to prohibit conduct that violates federal law. Defendants contend the exception referenced by Plaintiffs is inapplicable. The issue presented, therefore, is whether the Eleventh Amendment divests this Court of subject matter jurisdiction over Plaintiffs' cause of action.

Federal courts are courts of limited jurisdiction; they may exercise jurisdiction only when specifically authorized to do so. *Castaneda v. I.N.S.*, 23 F.3d 1576, 1580 (10th Cir.1994). Given this limited authority, there is a presumption against federal jurisdiction. *Scheideman v. Shawnee County Bd. of Cty. Comm'rs*, 895 F.Supp. 279, 281 (D.Kan.1995) (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir.1974)). Because the party invoking the jurisdiction of the court has the duty to establish that federal jurisdiction does exist, it is the plaintiff who bears the burden of showing why the case should not be dismissed when federal jurisdiction is challenged. *Id.; Jensen v. Johnson County Youth Baseball League*, 838 F.Supp. 1437, 1439–40 (D.Kan.1993). A court lacking jurisdiction must dismiss the case at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking. *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir.), *cert. denied*, 516 U.S. 863, 116 S.Ct. 174, 133 L.Ed.2d 114 (1995); Fed.R.Civ.P. 12(h)(3). Challenges to jurisdiction under Fed.R.Civ.P. 12(b)(1) generally take two forms: facial attacks on the sufficiency of jurisdictional allegations and factual attacks on the accuracy of those allegations. *Holt v. United States*, 46 F.3d 1000, 1002–3 (10th Cir.1995). Defendants' motion falls within the first category.

### A. Eleventh Amendment Immunity in General

"The Eleventh Amendment generally bars suits against a state in federal

---

1. Jim Conant, in his official capacity as Director of the Division of Alcoholic Beverage Control, originally was named in the Complaint as a defendant in this matter. On January 6, 2000, however, Robert G. Longino replaced Jim Conant as Director of the ABC. On January 21, 2000, Defendants filed a notice of substitution of party to reflect that change.

court commenced by citizens of that state or citizens of another state." *Elephant Butte Irr. Dist. v. Department of Interior,* 160 F.3d 602, 607 (10th Cir.1998), *cert. denied,* 526 U.S. 1019, 119 S.Ct. 1255, 143 L.Ed.2d 352 (1999). There are three primary methods, however, in which a plaintiff can circumvent the Eleventh Amendment. *J.B. v. Valdez,* 186 F.3d 1280, 1285–86 (10th Cir.1999) (citing *Elephant Butte,* 160 F.3d at 607; *ANR Pipeline Co. v. Lafaver,* 150 F.3d 1178, 1187–88 (10th Cir.) *cert. denied,* 525 U.S. 1122, 119 S.Ct. 904, 142 L.Ed.2d 902 (1999)). First, a state may consent to the action. *Id.* at 1286 (citations omitted). "Second, 'Congress may clearly and expressly abrogate the states' immunity.'" *Id.* (citations omitted). Third, "a party may sue a state official pursuant to *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)." *Id.* (citing *Elephant Butte,* 160 F.3d at 607). It is the *Ex parte Young* exception to Eleventh Amendment immunity upon which Plaintiffs rely to establish federal jurisdiction.

### B. The Ex Parte Young "Exception" To Eleventh Amendment Immunity

■ "Under the *Ex parte Young* doctrine, 'the Eleventh Amendment generally does not bar a suit against a state official in federal court which seeks only prospective equitable relief for violations of federal law, even if the state is immune.'" *Id.*

(quoting *Elephant Butte,* 160 F.3d at 607); *see also Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985) ("[A] suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State. The theory of *Young* [is] that an unconstitutional statute is void, and therefore does not impart to [the state official] any immunity from responsibility to the supreme authority of the United States.") (citations and internal quotation marks omitted).

Plaintiffs argue the instant cause of action falls squarely within the permissible ambit of *Ex parte Young* because they seek only the following prospective equitable relief in their suit: (1) a declaratory judgment finding Kansas state officials have violated the U.S. Constitution by discriminating against nonresidents seeking wholesale beer and liquor licenses; and (2) an injunction prohibiting Kansas state officials from enforcing the unconstitutional nonresidency bar against Plaintiffs in the future.[2] Defendants do not dispute Plaintiffs' contention that *Ex parte Young* is still a valid exception to Eleventh Amendment immunity, but instead argue that limitations to the doctrine recently imposed by the United States Supreme Court render the doctrine inapplicable under the facts at bar. *See Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).[3]

**2.** In response to Defendants' argument that the *Ex parte Young* doctrine—an exception applicable only to state officials—does not defeat immunity conferred upon the State of Kansas and the Kansas Department of Revenue by the Eleventh Amendment, Plaintiffs concede that defendants State of Kansas and the Kansas Department of Revenue should be dismissed based on this reasoning. *See Ellis v. Univ. of Kansas Med. Ctr.,* 163 F.3d 1186, 1196 (10th Cir.1998) (state or state agency sued in its own name is not subject to federal compensatory or injunctive relief). Thus, defendants State of Kansas and the Kansas De-

partment of Revenue will be dismissed as defendants.

**3.** Although *Coeur d'Alene* and *Seminole* both work to limit the scope of the *Ex parte Young* doctrine, the United States Supreme Court likewise acknowledged the continuing validity of the *Ex parte Young* doctrine in both of these cases. *See Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. at 268 ("We do not, then, question the continuing validity of the *Ex parte Young* doctrine"); *Seminole Tribe v. Florida,* 517 U.S. at 72, 116 S.Ct. 1114 ("[S]everal avenues remain open for ensuring state compliance with federal law. Most no-

Although there is no dispute that the two Supreme Court cases to which Defendants refer have limited the scope of the *Ex parte Young* doctrine, the Court rejects Defendants' argument that they render the doctrine inapplicable under the facts at bar.

### 1. *Seminole Tribe v. Florida—The "Remedial Scheme" Limitation*

In *Seminole Tribe v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), an Indian Tribe brought suit in federal court seeking to force the state of Florida to comply with provisions of the Indian Gaming Regulatory Act ("IGRA"). Because they had named Florida's governor Lawton Chiles as a defendant in the action, plaintiffs sought to invoke the *Ex parte Young* rule permitting federal jurisdiction over claims for prospective injunctive relief against state officials. *Id.* The Court, however, limited the scope of the *Ex parte Young* doctrine to hold that the doctrine should not be invoked in those cases where Congress "has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right." *Id.*

Defendants argue that the *Seminole Tribe v. Florida* limitations to the *Ex parte Young* doctrine render the doctrine inapplicable here. The Court finds, however, that *Seminole Tribe* has no application to the case at bar. The *Seminole Tribe* Court held that where Congress has established a detailed and specific remedial scheme to redress violations of federal law, *Ex parte Young* cannot be employed to expand a plaintiff's remedies beyond those set by Congress. 517 U.S. at 73, 76. Because there is no detailed statutory remedial scheme available for the § 1983 claims asserted ·by Plaintiffs in the case at bar, the limitation is immaterial. *See Ellis v.*

*Univ. of Kansas Med. Ctr.,* 163 F.3d 1186, 1197 (10th Cir.1998) (holding claims based on the Constitution were not affected by the decision in *Seminole Tribe* because § 1983 does not provide a detailed remedial scheme.); *Elephant Butte,* 160 F.3d at 608 n. 7 (concluding that federal question jurisdiction was appropriate under *Ex parte Young* because "no alternative congressionally mandated statute limits or prevents federal jurisdiction in this matter.")

### 2. *Idaho v. Coeur d'Alene Tribe—The "Special Sovereignty Issue" Limitation*

In *Idaho v. Coeur d'Alene Tribe,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), the second case limiting the scope of the *Ex parte Young* doctrine, an Indian Tribe brought suit in federal court seeking a declaratory judgment establishing its right to quiet enjoyment over the submerged lands of Lake Coeur d'Alene. The Tribe also sought prospective injunctive relief against numerous Idaho state officials to prevent them from exercising the state's asserted regulatory jurisdiction over those submerged lands. Although the tribe sought only prospective equitable relief against state officials, the Court found the requested injunctive relief would be the "functional equivalent" of a quiet title action against the state and that such relief "implicates special sovereignty interests." The Court ultimately held that the *Ex parte Young* doctrine may not be used to support prospective federal court injunctive relief against state officials when that relief is just as much an intrusion on state sovereignty as an award of money damages.

 In light of the *Coeur d'Alene* holding, the Tenth Circuit Court of Appeals subsequently imposed a new requirement

---

tably, an individual may obtain injunctive relief under *Ex parte Young* in order to remedy

a state officer's ongoing violation of federal law") (internal reference omitted.)

as part of the *Ex parte Young* analysis. *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1190 (10th Cir.1998). First, the "federal courts must examine whether the relief being sought against a state official 'implicates special sovereignty interests.'" *Id.* "If so, [the court] must then determine whether that requested relief is the 'functional equivalent' to a form of legal relief against the state that would otherwise be barred by the Eleventh Amendment." *Id.* ("In the end, we must not extend the *Ex parte Young* doctrine to allow a suit for prospective equitable relief when that relief would be just as intrusive, if not more so, into core aspects of a state's sovereignty.")

In the case at bar, Defendants argue that their regulation and administration of alcoholic beverages is a "special sovereignty interest" as defined by *Idaho v. Coeur d'Alene Tribe*, and that such interest divests the federal court of any authority to redress violations of constitutional rights. In support of their argument, Defendants rely heavily on *ANR Pipeline v. Lafaver*, 150 F.3d 1178 (10th Cir.1998) (finding state's power to assess and levy personal property taxes on property within its borders implicates special sovereignty interests and thus, notwithstanding the *Ex parte Young* exception, court held taxpayers' claims against state officials for prospective relief was barred by doctrine of sovereign immunity). Defendants' reliance on *ANR Pipeline* is misplaced.

Review of the *ANR Pipeline* opinion reveals that its holding is inextricably bound to the specific facts of the case. Complaining about the constitutionality of property tax evaluations for past and future tax years, the plaintiffs in *ANR Pipeline* requested damages for prior wrongs,

as well as a declaratory judgment and injunction requiring Kansas to recertify their property valuations for past and future tax years. Relying on *Coeur d'Alene Tribe*, the Tenth Circuit found that a declaration ordering Kansas to recertify its valuations for future years would be "'fully as intrusive' into the state's sovereignty as would be a retroactive money judgment against excessive property taxes." *ANR Pipeline*, 150 F.3d at 1191. The Tenth Circuit went on to find that requesting the court to "rewrite Kansas' property tax code" would constitute the type of pervasive and intrusive relief that went to the core of the state's sovereign interests since "it is impossible to imagine that a state government could continue to exist without the power to tax." *Id.* at 1193–94.[4]

■ In this case, Plaintiffs seek to enforce their right to apply and be considered for a wholesale liquor license on nondiscriminatory grounds. Unlike a tax issue going to the core of the state's sovereign interests, this cause of action does not threaten the ability of the state of Kansas to exist. Neither does this cause of action threaten to divest Kansas of its authority to control alcohol in the state. This conclusion is supported by a number of decisions in this jurisdiction that postdate both *Coeur d'Alene Tribe* and *ANR Pipeline*. As described below, courts in this jurisdiction have limited the scope of "special sovereignty interests" to those situations that strike at the heart of the state's ability to function.

In *Buchwald v. Univ. of New Mexico Sch. of Medicine*, 159 F.3d 487 (10th Cir. 1998), for example, the plaintiff alleged the state and its officers unconstitutionally discriminated against her on the basis of non-residency. As a result, the plaintiff sought

---

4. The Tenth Circuit also noted that the request for future tax relief was preempted by the Tax Injunction Act, 28 U.S.C. § 1341, which requires all constitutional challenges to state taxation be heard in state court. Citing *Seminole Tribe*, the Tenth Circuit found that *Ex parte Young* could not be employed to expand plaintiffs' remedies beyond those set by Congress.

prospective injunctive relief ordering her admission to the medical school. Citing *Coeur d'Alene* and *ANR Pipeline*, the state argued the requested relief intruded upon its special sovereignty interest in controlling and regulating its state-financed universities. Characterizing as "unique" those circumstances under which special sovereignty interests would limit federal jurisdiction, the Court rejected the state's argument and concluded that the relief sought did not impair the state's ability to function:

> In those unique circumstances where a plaintiff's action affects the sovereign interests of a state that the Eleventh Amendment was meant to protect, *Coeur d'Alene* (majority holding that plaintiff's action would in effect divest state of sovereign control over its submerged lands); *ANR Pipeline* ("It is impossible to imagine that a state government could continue to exist without the power to tax"), the *Ex parte Young* exception does not apply. Here, there is no suggestion that plaintiff's requested relief will affect the core aspects of New Mexico's sovereignty. There is certainly no threat that the New Mexico government would cease to exist without UNMSM's disputed policy. Moreover, most government policies do not affect core aspects of a state's sovereignty. We therefore see no reason to extend the *Coeur d'Alene* exception to the situation at hand.

*Buchwald v. Univ. of New Mexico Sch. of Medicine*, 159 F.3d at 495–96 n. 6 (internal citations omitted).

The Tenth Circuit again refused to expand the limited scope of "special sovereignty interests" in the case of *Ellis v. Univ. of Kansas Med. Ctr.*, 163 F.3d 1186 (10th Cir.1998) (affirming decision of district court directing state officials to reinstate a state employee who was the victim of unlawful discrimination). Distinguishing the facts of its case from *Coeur d'Alene*

(control over land owned by the state) and *ANR Pipeline* (control over state taxation), the *Ellis* court held that state control over its employees is not a special sovereignty interest requiring a federal court to decline jurisdiction.

More recently, the Tenth Circuit again confirmed its intention to limit the scope of special sovereignty interests in the case of *J.B. v. Valdez*, 186 F.3d 1280 (10th Cir. 1999) (finding structural reform of the state's welfare system is not a special sovereignty interest precluding relief under *Ex parte Young* and that a "challenge to the administration of a welfare program is not the equivalent of a suit for money damages nor does it strike at a state's fundamental power, such as the power to tax.") In *Valdez*, sixteen mentally disabled children in the custody of the state sought declaratory and injunctive relief under the Americans with Disabilities Act and the Rehabilitation Act which would direct state officials to structurally reform their system for evaluating and treating children with mental disabilities. In the context of rejecting an Eleventh Amendment immunity defense, the Tenth Circuit recently determined that

> [T]he result in *Coeur d'Alene Tribe* "reflects the extreme and unusual case in which ... the suit is prohibited" because it involves 'particular and special circumstances' that affect 'special sovereignty interests' and cause 'offense to [the state's] sovereign authority'.... Our recent decision in *ANR Pipeline* reflects the limited scope of the additional *Coeur d'Alene Tribe* factors. In that case, we held that the power to assess and levy personal property taxes on land within the state of Kansas constituted a special sovereignty interest. After declaring that "a state's sovereign power to tax its citizens has been a hallmark of the western legal tradition," and that "Congress has made it clear in no uncertain terms that a state has a special and fundamen-

tal interest in its tax collection system," we stated: "We do not doubt, therefore, that a state's interests in the integrity of its property tax system lie at the core of the state's sovereignty. Indeed, . . . it is impossible to imagine that a state government could continue to exist without the power to tax."

*J.B. v. Valdez,* 186 F.3d at 1286–87 (citations omitted).[5]

 Unlike the state's power to tax or the state's sovereign authority to own title and control its own property, this Court concludes under the facts presented here that regulation of alcoholic beverages is not so fundamentally tied to the state's ability to independently function so as to constitute a special sovereignty interest as defined by *Coeur d'Alene* and *ANR Pipeline.* The Court therefore sees no reason to extend the *Coeur d'Alene* exception to the situation at hand.[6]

In conclusion, the Court determines that the *Ex parte Young* exception to Eleventh Amendment immunity specifically authorizes the instant suit for prospective relief against the state officers named in the Complaint and that limitations upon the *Ex parte Young* exception recently imposed by the United States Supreme Court are inapplicable under the facts at bar. Therefore, Defendants' motion to dismiss defendants Pierce and Longino based on lack of subject matter jurisdiction will be denied.

## II. Fed.R.Civ.P. 12(b)(6): Failure to State a Claim

Defendants next argue that Plaintiffs' Complaint fails to state a claim upon which relief may be granted based on (1) Eleventh Amendment immunity; (2) the fact that defendants the State of Kansas and the Kansas Department of Revenue are not "persons" under 42 U.S.C. § 1983; and (3) as a state agency, the Kansas Department of Revenue lacks capacity to be sued.

A court may not dismiss a cause of action for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence,* 927 F.2d 1111, 1115 (10th Cir. 1991). A court judges the sufficiency of the complaint by accepting as true the well-pleaded factual allegations and drawing all reasonable inferences in favor of

---

**5.** Notably, the Tenth Circuit has not applied *Coeur d'Alene* to bar relief under *Ex parte Young* even where title to and control of state property is involved. *See Elephant Butte Irrig. Dist. v. Dept. of Interior,* 160 F.3d 602 (10th Cir.1998) (holding that state's property interest in right to profits from a land lease on reservoir projects did not constitute a special sovereignty interest); *Branson Sch. Dist. v. Romer,* 161 F.3d 619 (10th Cir.1998) (no special sovereignty interest when requested relief affects only limited aspects of how the state may manage public lands; further finding that such circumstances cannot seriously be compared to a quiet title action in which all or substantially all ownership interests in the land would be stripped from the state), *cert. denied,* —— U.S. ——, 119 S.Ct. 1461, 143 L.Ed.2d 546 (1999).

**6.** Defendants also appear to argue that Plaintiffs have adequate state remedies available to

them and, pursuant to *Idaho v. Coeur d'Alene Tribe,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), the adequacy of state remedies is instrumental in determining the availability of a federal forum. The Court rejects Defendants' argument. After the decision in *Coeur d'Alene Tribe,* as before its pronouncement, plaintiffs seeking prospective relief against state officials to end an ongoing violation of constitutional rights are generally entitled to proceed in federal court irrespective of the presence or absence of parallel state remedies. *See ANR Pipeline Co. v. Lafaver,* 150 F.3d 1178, 1192 (10th Cir.1998) ("Indeed, it appears to be clear from the concurring and dissenting opinions in *Coeur d'Alene Tribe* that an *Ex parte Young* injunction still may issue even when the state courts would provide an adequate forum for the plaintiff's constitutional claims.")

plaintiff. *Shaw v. Valdez,* 819 F.2d 965, 968 (10th Cir.1987). The issue in resolving a motion to dismiss for failure to state a claim is not whether the plaintiff ultimately will prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds, *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

Defendants' argument that Plaintiffs fail to state a claim against defendants the State of Kansas and the Kansas Department of Revenue based on Eleventh Amendment immunity is well taken and, significantly, is not disputed by Plaintiffs. As set forth in footnote 1, *supra,* the *Ex parte Young* doctrine—an exception applicable only to state officials—does not defeat immunity conferred upon the State of Kansas and the Kansas Department of Revenue by the Eleventh Amendment. Plaintiffs concede in their responsive brief that defendants State of Kansas and the Kansas Department of Revenue should be dismissed based on this reasoning. *See Ellis v. Univ. of Kansas Med. Ctr.,* 163 F.3d 1186, 1196 (10th Cir.1998) (state or state agency sued in its own name is not subject to federal compensatory or injunctive relief). Thus, as also noted *supra,* defendants the State of Kansas and the Kansas Department of Revenue will be dismissed as defendants. Given this conclusion, the Court finds it unnecessary to determine whether defendants the State of Kansas and the Kansas Department of Revenue are "persons" under 42 U.S.C. § 1983 or whether the Kansas Department of Revenue lacks the capacity to be sued as a particular party.

For the reasons stated in Section I above, however, the Court is persuaded that the *Ex parte Young* exception to Eleventh Amendment immunity is applicable here to defendants Pierce and Longino, in their capacities as state officials, and that limitations upon the *Ex parte Young* exception recently imposed by the United States Supreme Court are inapplicable under the facts at bar. Therefore, Defendants' motion to dismiss defendants Pierce and Longino for failure to state a claim will be denied.

Accordingly, it is hereby ordered that Defendants' Motion to Dismiss is

(1) GRANTED, without objection from Plaintiffs, with respect to defendants the State of Kansas and the Kansas Department of Revenue and such defendants shall be dismissed from this lawsuit with prejudice; and

(2) DENIED with respect to defendants Pierce and Longino.

IT IS SO ORDERED.